IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANA SWENSON, | ) |
| | ) |
| Plaintiff, | ) NO. 3:23-cv-00590 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| ATCO INDUSTRIES, LLC, | ) MAGISTRATE JUDGE NEWBERN |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court are Defendant ATCO Industries, LLC's ("ATCO") Motion for Judgment on the Pleadings, or, in the Alternative, Motion for Summary Judgment (Doc. No. 15) and Motion to Strike Plaintiff's Declaration and For Sanctions (Doc. No. 27). Plaintiff Dana Swenson ("Swenson") filed responses in opposition (Doc. Nos. 21, 29), and ATCO filed replies in support of both motions (Doc. Nos. 23, 32). For the reasons set forth below, ATCO's Motion for Judgment on the Pleadings, or, in the Alternative, Motion for Summary Judgment (Doc. No. 15) is **GRANTED** in part and **DENIED** in part. ATCO's Motion to Strike Plaintiff's Declaration and For Sanctions (Doc. No. 27) is **DENIED** without prejudice to re-filing.

### I. BACKGROUND

This lawsuit arises out of Swenson's employment at ATCO. On June 12, 2023, Swenson filed a Complaint against ATCO asserting claims for violation of the Americans with Disabilities Act and retaliation (Compl., Doc. No. 1). Swenson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 25, 2022. (Doc. No. 22 at ¶ 2). On October 21, 2022, approximately two months' after Swenson filed her EEOC Charge, she filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia, Case No. 22-41305 (the "First Bankruptcy"). (*Id.* at ¶ 3). In the First Bankruptcy petition, Swenson

was asked to list "all matters" within one year of the filing of the petition, in which she was a party to "any lawsuit, court action, or administrative proceeding." (*Id.* ¶ 11). Swenson omitted the EEOC Charge from the First Bankruptcy petition. (Doc. No. 16-2 at PageID # 96). The petition also asked Swenson to list "[c]lams against third parties, whether or not you have filed a lawsuit or made a demand for payment," and specifically listed "employment disputes" as an example. (Doc. No. 22 ¶ 13). Swenson failed to list her EEOC Charge or her claims against ATCO on the petition. (Doc. No. 16-2 at PageID # 105). Swenson's bankruptcy attorney, Chris Rampley, stated that Swenson did not disclose her EEOC Charge to him before the First Bankruptcy was filed or at any other time during Rampley's representation of Swenson in the First Bankruptcy. (Doc. No. 28-1 at PageID # 669). Rampley stated that he was unaware of Swenson's EEOC Charge until it was disclosed to him by Swenson's counsel in this lawsuit in January of 2024. (*Id.* at PageID # 670). On October 21, 2022, Swenson signed a Client Engagement and Fee Agreement, which contained the following relevant provisions:

    J.    **<u>HONESTY</u>**

        a. I understand that I sign the petition and schedules under the penalty of perjury– meaning that I am swearing under oath that the information contained on those documents is true and correct to the best of my ability.

        f. I understand that a potential personal injury claim, worker's compensation claim, disability claim, or any other claim for damages or money, including property damage claims must be disclosed as an asset on my schedules even if I don't know the actual value of such claims, and even though I am not sure that they are valid claims. If such a claim arises during my bankruptcy, or within 180 days after discharge, then I must notify the attorney so that he may disclose such to the Bankruptcy Trustee. <u>If a claim arises during my Chapter 13 then I will let my bankruptcy attorney know within 7 days. I understand that if I do not list my case on my bankruptcy then I may lose my case automatically</u>. Any settlement must be approved by the trustee and the court.

    CC.    **LAWSUITS AND CLAIMS – VERY IMPORTANT !!!**

    a. I understand that I must list ALL claims and lawsuits that I have. If I do not list my claims and lawsuits then I may **automatically lose** that claim or lawsuit because it looks like I am trying to hide the claim from the court and the trustee. How will the insurance company's lawyers know? They search the bankruptcy court records!

    b. Examples of claims and lawsuits that have to be listed include: Car wrecks, personal injury, slip and fall, medical malpractice, workers' compensation, social security disability, medical malpractice, employment discrimination class action lawsuits, divorces involving money and property, and ALL OTHER TYPES OF CLAIMS AND LAWSUITS. List it now or possibly lose it forever!

    c. I understand that I need COURT PERMISSION to settle any claim or lawsuits while my chapter 13 case is open. The details of my claim or lawsuit will be revealed to everyone involved in may [sic] chapter 13 case.

    d. I understand that I may put my whole claim or lawsuit in jeopardy and lose any money I am due if I do not reveal my claim or lawsuit to my attorney and get bankruptcy cout permission to settle.

    e. If such a claim or lawsuit comes TODAY OR AFTER (during this case) then I must immediate [sic] give Chris Rampley's office notice **in writing and by telephone** so that the claim may be properly listed on your case.

(Doc. No. 28-3 at PageID # 678, 679, 692) (emphasis in original). The bankruptcy court ultimately dismissed Swenson's First Bankruptcy because she failed to pay the filing fee. (Doc. No. 22 at ¶ 4).

On January 31, 2023, Swenson filed a second Chapter 13 bankruptcy action, Case No. 23-40122 (the "Second Bankruptcy"). (*Id.* at ¶ 6). Swenson received a Notice of Right to Sue letter regarding her EEOC Charge on March 24, 2023, at which time the Second Bankruptcy was still pending. (Doc. No. 22 ¶ 7). The Second Bankruptcy was still pending when Swenson filed her Complaint on June 12, 2023. (Doc. No. 22 ¶ 8). The Second Bankruptcy petition asked Swenson to list all matters within one year of filing the Second Bankruptcy in which she was a party to "any lawsuit, court action, or administrative proceeding." (Doc. No. 16-4 at PageID # 156). Swenson omitted the EEOC Charge. (*Id.*). The petition also asked Swenson to list claims against a third party, whether or not Swenson had already filed a lawsuit or demanded payment, and specifically

3

listed "employment disputes" as an example. (Doc. No. 16-4 at PageID # 165). Swenson failed to list her EEOC Charge or her claims against ATCO. (Doc. No. 16-2 at PageID # 105).

On March 6, 2023, the bankruptcy court held a hearing at which Swenson testified that everything she filed in the Second Bankruptcy petition was true and accurate. (Doc. No. 28-5 at PageID # 744). Swenson also testified that she included all of her assets in the Second Bankruptcy filing. (*Id.*). Swenson testified that there were not any errors or omissions that needed to be disclosed concerning her Second Bankruptcy filing. (*Id.*). During the hearing, the trustee specifically asked Swenson if she had a "situation where [Swenson] ha[d] a claim or lawsuit against someone else?". (*Id.* at PageID # 748). Swenson testified that she did not. (*Id.*) The bankruptcy court dismissed the Second Bankruptcy on October 11, 2023. (Doc. No. 16-8).

On January 2, 2024, ATCO filed the pending motion for judgment on the pleadings or, in the alternative, motion for summary judgment asserting Swenson is judicially estopped from pursuing her claims in this case because she failed to disclose them during either bankruptcy. (Doc. No. 15).

## II. STANDARD OF REVIEW[1]

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-

---

[1] The Court construes ATCO's motion for judgment on the pleadings or, in the alternative, motion for summary judgment (Doc. No. 15) as a motion for summary judgment under Fed. R. Civ. P. 56.

4

moving party's claim or by demonstrating an absence of evidence of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III.     ANALYSIS

A debtor has an affirmative duty to disclose all of her assets to the bankruptcy court. 11 U.S.C. § 521(a)(1). "[D]isclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *Lewis v. Weyerhaeuser*, 141 F. App'x 420, 424 (6th Cir. 2005); *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 479, n. 5 (6th Cir. 2010) ("The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action."); *Weyerhaeuser*, 141 F. App'x at 424 ("It is well-settled that a cause of action is an asset that must be scheduled under [11 U.S.C. § 521].").

The doctrine of judicial estoppel bars claims not disclosed in prior bankruptcy proceedings where (1) the debtor assumes a position contrary to the one asserted under oath while in bankruptcy; (2) the bankruptcy court adopted the contrary position either as a preliminary matter

or as a part of final disposition; and (3) the debtor's omission did not result from mistake or inadvertence. *White*, 617 F.3d at 478. "[J]udicial estoppel [is] a rule against 'playing fast and loose with the courts,' 'blowing hot and cold as the occasion demands,' or 'having [one's] cake and eating it too.'" *Id*. (quoting *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988)). Judicial estoppel is an equitable remedy that should be "applied with caution to avoid impinging on the truth-seeking function of the court." *Eubanks v. CBSK Fin. Grp., Inc*., 385 F.3d 894, 899 (6th Cir. 2004).

While "[c]ourts have generally applied judicial estoppel against claims that debtors fail to disclose in their bankruptcy filings to prevent debtors from disclaiming causes of action in order to minimize their assets in bankruptcy proceedings," the Sixth Circuit has recognized that "this justification extends only to disclosures that might materially alter the bankruptcy proceedings, and therefore does not apply to claims for injunctive relief." *McGruder v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 99 F.4th 336, 342 (6th Cir. 2024) (internal citations omitted). Here, Swenson seeks both monetary and equitable relief. Accordingly, the Court will address the application of judicial estoppel to each of Swenson's claims.

## A. Swenson's Claims For Monetary Relief

1. <u>Contrary Positions</u>

ATCO points to ample evidence that Swenson filed her EEOC Charge approximately two months' before filing the First Bankruptcy and failed to disclose her EEOC Charge or potential claims against ATCO in the First Bankruptcy. (Doc. No. 16-2 at PageID # 96, 105). ATCO also points to evidence that Swenson received her Notice of Right to Sue letter from the EEOC and filed the Complaint and that Swenson failed to disclose the EEOC Charge or this lawsuit in the pending Second Bankruptcy. (Doc. No. 16-4 at PageID # 156, 165). Further, ATCO points to evidence that Swenson testified under oath that: everything she filed in the Second Bankruptcy petition, including her omission of any potential claims against ATCO, was true and accurate; she

6

had included all of her assets in the Second Bankruptcy filing; there were no errors or omissions that needed to be disclosed concerning her Second Bankruptcy filing; and she did not have a claim or lawsuit against someone else. (Doc. No. 28-5 at PageID # 744, 748). Swenson does not dispute that she failed to disclose her claims against ATCO in both bankruptcy proceedings. Accordingly, the Court finds that ATCO has established the absence of material disputes of fact as to whether Swenson's position in this lawsuit directly contradicts the positions she asserted under oath in both bankruptcy proceedings.

2. Bankruptcy Courts Adopted Contrary Positions

ATCO also points to evidence that both bankruptcy courts adopted Swenson's positions as preliminary matters during the bankruptcy proceedings, including by issuing an order continuing the automatic bankruptcy stay during Swenson's Second Bankruptcy and finding that "[Plaintiff] has shown this Court by clear and convincing evidence that this case was filed in good faith[.]" (Doc. No. 16-9 at PageID # 266). Similarly, ATCO points to evidence that Swenson was granted extended protections under the bankruptcy stay based on her sworn representations to the Court during the First Bankruptcy. (Doc. No. 16-10 at PageID # 269). Accordingly, the Court finds that ATCO has met its burden in establishing the absence of material disputes of fact as to whether the bankruptcy courts adopted Swenson's contrary positions.

3. Whether Omission Resulted from Mistake or Inadvertence

Swenson does not dispute that she failed to disclose her claims against ATCO in either bankruptcy. Nor does Swenson contend that she amended her petitions in either bankruptcy to correct the omissions. Instead, Swenson argues that her omissions were inadvertent. Specifically, Swenson argues that during both bankruptcies, she relied on the advice of her counsel and counsel's representatives in omitting the EEOC Charge and her claims against ATCO.

7

The circumstances in which a debtor's failure to disclose information to a bankruptcy court might be deemed the result of mistake or inadvertence are: (1) where a debtor lacks knowledge of the factual basis of the undisclosed claims; (2) where the debtor has no motive for concealment; and (3) where the evidence indicates a lack of bad faith. *White*, 617 F.3d at 478.

It is undisputed that Swenson had notice of the factual basis of her EEOC Charge and potential claims against ATCO during both bankruptcies. (Doc. No. 22 ¶¶ 2, 7). She filed an EEOC Charge on August 25, 2022, before either bankruptcy had been filed. Further, Swenson received her Notice of Right to Sue letter from the EEOC on March 24, 2023, and filed the Complaint while the Second Bankruptcy was still pending. (Doc. No. 22 ¶ 7).

Swenson contests that she had a motive for concealment. Courts generally consider that any plaintiff who fails to disclose claims in bankruptcy has a motive for concealment because if the claim becomes part of the bankruptcy estate, then the proceeds could go toward paying creditors, rather than going directly to the plaintiff. *See White*, 617 F.3d at 479; *Weyerhaeuser*, 141 F. App'x at 426 ("[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets"); *Southall v. USF Holland, Inc.*, No. 3:15-cv-1266, 2018 WL 6413651, at * 3 (M.D. Tenn. Dec. 5, 2018).

ATCO argues that Swenson had a motive to conceal her EEOC Charge and her claims against ATCO in both bankruptcies because, in doing so, any recovery from this lawsuit would go to Swenson directly, instead of her creditors. (Doc. No. 16 at PageID # 79). In response, Swenson contends that she had no motive for concealment and "did intend for any proceeds [from this lawsuit] to go toward her creditors had she known an amount certain to disclose." (Doc. No. 21 at PageID # 294). Swenson argues that she "disclosed the existence of her EEOC Charge and lawsuit, but, at the early stages of the lawsuit, recovery was speculative." (Doc. No. 21 at PageID # 294). It appears Swenson is arguing that because she did not know the value of her lawsuit, she was not

8

required to disclose it. Swenson has not cited to any case where the court found an absence of motive based on the value of a potential lawsuit. Further, the Court finds that if Swenson had disclosed her claims for monetary relief, such disclosures may have materially altered the bankruptcy proceedings as the claims would have potentially added value to Swenson's bankruptcy estate and may have generated funds that could be distributed to creditors.

Swenson also attempts to demonstrate an absence of bad faith and argues that an absence of bad faith can be shown in circumstances where the claimant relies on the advice of their attorney. A plaintiff may show an absence of bad faith by pointing to evidence "showing her attempt to correct her initial omission." *White*, 617 F.3d at 480; *see also, Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 315 (6th Cir. 2013) ("Though we view the record in the light most favorable to [the plaintiff], this court's 'absence of bad faith' inquiry focuses on affirmative actions taken by the debtor to notify the trustee or bankruptcy court of an omitted claim."). In this regard, courts must consider the timing, extent, and effectiveness of the efforts to correct the omission. *White*, 617 F.3d at 480. It is the plaintiff's burden to come forward with affirmative evidence demonstrating "absence of bad faith." *White*, 617 F.3d at 478, n. 4. Further, to prevail on a reliance-on-counsel theory, a plaintiff must show (1) full disclosure of all pertinent facts to counsel and (2) good faith reliance on counsel's advice. *Eifler v. Wilson & Muir Bank & Tr. Co.*, 588 Fed. Appx. 473, 479 (6th Cir. 2014).

Swenson contends that she notified her attorney's paralegal of her EEOC charge and claims against ATCO during the intake process in the First Bankruptcy. (Doc. No. 21 at PageID # 290). Swenson also argues that the paralegal informed Swenson that she did not need to report the EEOC Charge to the bankruptcy court "because it was speculative and she did not have any documents to quantify the potential asset." (*Id.*). Swenson alleges that she did not personally speak to her bankruptcy attorney until her bankruptcy documents had been "completed for her review and

9

Case 3:23-cv-00590   Document 44   Filed 05/23/24   Page 9 of 14 PageID #: 1006

sign." (*Id.*). Swenson states that she obtained different counsel for her Second Bankruptcy and informed her attorney's office of this pending lawsuit and that her counsel in the Second Bankruptcy prepared the bankruptcy documents, which Swenson "reviewed and signed under the belief that all essential disclosures were made." (*Id.* at PageID # 291). Swenson also argues that her counsel and counsel's representatives informed her that she did not need to report her claims "until she had a more definitive estimate of their value." (Doc. No. 21 at PageID # 293).

Swenson relies on *Couch v. Certified Flooring Installation, Inc.*, 439 F. Supp. 3d 964, 973 (S.D. Ohio 2020). In *Couch*, a debtor failed to disclose his FLSA claim to the bankruptcy court because his attorney advised him disclosure was not necessary. *Id.* at 969. The Court held that a finding of bad faith was not required when a claimant relied on his attorney's advice that no disclosure was required. However, the Court recognized that an absence of bad faith "is further evidenced by Couch's corrective efforts. Couch went beyond merely moving to amend his claim to the bankruptcy court. He also has communicated with the Trustee of his bankruptcy case to ensure that the matter is handled appropriately" and "[t]he Trustee even filed a motion supporting Couch and urging this Court not to find Couch acted in bad faith." *Id.* at 973. The Court finds that *Couch* is distinguishable from the present case because the claimant in *Couch* took affirmative steps to correct the omission, unlike here, where Swenson failed to take any corrective action to disclose the EEOC Charge or her claims against ATCO.

Further, the claimant in *Couch* relied on the advice of his attorney, unlike here, where Swenson relied on the advice of a paralegal and failed to inform her counsel directly. As the court in *Couch* expressly recognized, this distinction is important because the "Sixth Circuit has found it difficult to believe a party relied in good faith on the advice of the attorney's paralegal in answering a bankruptcy question." *Id.* at 974. Additionally, ATCO points to evidence that the paralegal that conducted Swenson's intake form in the First Bankruptcy was unaware of Swenson's

10

EEOC Charge until Swenson's bankruptcy counsel informed him of the EEOC Charge in February 2024. (Doc. No. 32-1 at PageID # 860-861).

Additionally, in *Couch*, counsel informed the plaintiff on multiple occasions that he was not required to disclose a potential lawsuit while here, Swenson fails to show that her counsel continuously instructed her not to disclose her claims against ATCO. Further, the evidence presented by ATCO refutes Swenson's argument her counsel advised her to omit her claims, as Swenson's bankruptcy attorney submitted a sworn affidavit stating that he was unaware of Swenson's EEOC Charge until January of 2024, when Swenson's counsel in this lawsuit notified him. (Doc. No. 28-1 at PageID 669).

ATCO has also provided evidence that Swenson's bankruptcy counsel instructed Swenson to disclose her claims against ATCO in the First Bankruptcy. The fee agreement between Swenson and her bankruptcy counsel expressly included language that informed Swenson of the importance of disclosing any claims she had and warned her that if she did not disclose the claims then she "may **<u>automatically lose</u>** that claim or lawsuit because it looks like [she] [is] trying to hide the claim from the court and the trustee…" and that Swenson needed to "[l]ist it now or possibly lose it forever!" (Doc. No. 28-3 at PageID # 678, 679, 692) (emphasis in original). Swenson does not direct the Court to any evidence demonstrating that her attorneys in either bankruptcy had knowledge of her claims against ATCO or instructed her not to disclose the claims. Nor does Swenson point to any evidence that she took any affirmative actions to correct her omissions of her claims against ATCO in either bankruptcy. The Court finds that Swenson's reliance-on-counsel defense fails because Swenson has failed to show that she fully disclosed all pertinent facts related to her claims against ATCO to her bankruptcy counsel or relied on her bankruptcy counsels' advice in good faith. Accordingly, the Court finds that ATCO has established the absence of material dispute of fact as to the bad faith element.

4. Bankruptcy Dismissal

Swenson also argues that judicial estoppel should not apply because her bankruptcies were dismissed rather than discharged. (Doc. No. 21 at PageID # 296). In support, Swenson cites to *Westbrooks v. Bd. of Trustees of E. Cleveland Pub. Lib.*, No. 1:16-CV-1438, 2016 WL 4577715, at *4 (N.D. Ohio Sept. 2, 2016). In *Westbrooks*, the Court declined to grant the defendant's motion for judgment on the pleadings even though the plaintiff failed to disclose her legal claims in her bankruptcy proceeding where the bankruptcy was dismissed without a discharge. *Id.* at *1. However, the Court in *Westbrooks* found that the plaintiff's failure to disclose her legal claims appeared to have been inadvertent and held that "[e]ven when bankruptcies are dismissed without discharge, some courts still apply judicial estoppel if plaintiff received an automatic stay in the bankruptcy" and "[t]he automatic stay is deemed a sufficient advantage to warrant judicial estoppel." *Id.* at *4. Here, Swenson received an automatic stay in the Second Bankruptcy and applied for and received an extension of the automatic stay. (Doc. No. 16-9 at PageID # 266).

The Court in *Westbrooks* also held that "there is a qualitative difference between failing to list a cause of action on a Schedule B Personal Property form – Plaintiff's error here – and making an affirmative misrepresentation to the court." *Id.* Unlike in *Westbrooks*, here Swenson made affirmative misrepresentations to the bankruptcy court by omitting her claims against ATCO on both bankruptcy petitions and representing to the trustee that no such claims existed. Accordingly, the Court finds that judicial estoppel applies to Swenson's claims for monetary relief and summary judgment will be granted as to those claims.

**B. Swenson's Claim for Injunctive Relief**

In *McGruder v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, the Sixth Circuit Court of Appeals held that judicial estoppel does not apply to preclude injunctive relief. *McGruder v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 99 F.4th 336 (6th Cir. 2024). The Sixth

12

Circuit recognized that the plaintiff's reinstatement claim "is not barred by judicial estoppel" because "as opposed to [plaintiff's] claims for money damages, a claim for reinstatement likely would not have been relevant to the bankruptcy court's determination of the proper disposition of [plaintiff's] debts." *Id.* at *4. Further, the Sixth Circuit rejected the argument that judicial estoppel should preclude "any injunctive relief that happens to entail some financial benefit to the claim – which includes most injunctive relief." *Id.*

Here, in addition to monetary relief, Swenson seeks reinstatement, which is a type of injunctive relief. (Doc. No. 1 ¶ 55). The Court finds that Swenson's reinstatement claim would not have added value to the bankruptcy estate even if she had disclosed it. Further, the Court finds that applying judicial estoppel to Swenson's reinstatement claim would "extend the judicial estoppel so far past its stated goals" and result in barring injunctive relief "that happens to entail some financial benefit to [Swenson]". *McGruder*, No. 22-5761, 2024 WL 1653480 at *4. Accordingly, summary judgment will be denied as to Swenson's reinstatement claim.

## C. ATCO's Motion to Strike and For Sanctions

ATCO also filed a motion to strike and for sanctions regarding Swenson's declaration in support of her response to ATCO's motion for judgment on the pleadings, or, in the alternative, motion for summary judgment. (Doc. No. 27). The Court finds that neither striking Swenson's declaration nor awarding sanctions against Swenson are warranted at this juncture. Accordingly, ATCO's motion to strike Swenson's declaration and for sanctions is denied without prejudice to refiling as litigation progresses.

## IV. CONCLUSION

Judicial estoppel is utilized to preserve "the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *White*, 617 F.3d at 476 (citing *Browning*, 283 F.3d at 776. Though judicial estoppel may appear a harsh remedy, it is appropriate

13

here on Swenson's claims for monetary relief. Judicial estoppel is not appropriate on Swenson's injunctive relief claim. Accordingly, ATCO's Motion for Judgment on the Pleadings or, in the alternative, Motion for Summary Judgment (Doc. No. 15) is **GRANTED** in part and **DENIED** in part. ATCO's Motion to Strike Plaintiff's Declaration and For Sanctions (Doc. No. 27) is **DENIED** without prejudice to re-filing.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE