IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANA SWENSON, ) | |
| ) | |
| Plaintiff, ) | NO. 3:23-cv-00590 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| ATCO INDUSTRIES, LLC, ) | MAGISTRATE JUDGE NEWBERN |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant ATCO Industries, LLC's ("ATCO") Motion for Summary Judgment. (Doc. No. 46). Plaintiff Dana Swenson ("Plaintiff") filed a response in opposition (Doc. No. 49), and ATCO filed a reply (Doc. No. 53). For the reasons set forth below, ATCO's Motion for Summary Judgment (Doc. No. 46) is **DENIED**.

### I.  BACKGROUND

This lawsuit arises out of Plaintiff's employment at ATCO. As discussed in detail below, the parties appear to have opposite views on a majority of the details surrounding Plaintiff's claims. As a result, the Court will provide a summary of the facts from its review of the record.

ATCO provides quality control services in the automotive and commercial truck industries. (Doc. No. 47-4 at PageID # 1103). On March 15, 2021, Plaintiff began working at ATCO as a project coordinator. (Doc. No. 47-2 at PageID # 1053; Doc. No. 47-3 at PageID # 1089). Plaintiff initially reported to Karen Brotherton and began reporting to Chellie Rhoden after Brotherton was promoted. (Doc. No. 47-2 at PageID # 1053-54).

Plaintiff testified that about one month after she started her employment at ATCO, she told Brotherton that she had a heart monitor to monitor her heart rate due to medications Plaintiff was on and the conditions she was experiencing. (Doc. No. 47-2 at PageID # 1062). Plaintiff also

testified that she asked for time off to go to her medical appointments and was not given time off to go to her appointments. (Doc. No. 47-2 at PageID # 1062). Plaintiff testified that she was never allowed to leave early for medical appointments (Doc. No. 47-2 at PageID # 1071).

Plaintiff also testified that she spoke to Rhoden about her medical conditions on multiple occasions. (Doc. No. 47-2 at PageID # 1079). Plaintiff testified that on one such occasion, Rhoden forgot Plaintiff had a doctor's appointment and told Plaintiff that she still needed to go to work, even though Plaintiff testified that she told Rhoden that the appointment was for a medication follow-up that was extremely important. (*Id.*) Plaintiff also testified that Rhoden told her while she was working at a job site in another state that she could not leave the facility to go get her medicine, despite that Plaintiff informed Rhoden that she needed her medication and was going through withdrawals. (Doc. No. 47-2 at PageID # 1078-79). Plaintiff later testified that Rhoden told her that she could go to her appointment but wouldn't get reimbursed for the mileage. (Doc. No. 47-2 at PageID # 1081). Plaintiff also testified that in December 2021, she informed Rhoden that she was having a "PTSD episode where it caused…severe triggers and inability to focus and severe depression" and asked for time off, which ATCO denied. (*Id.*). Plaintiff testified that at that time, her counselor put her "out for a week for mental health crisis." (*Id.*).

In July 2021, Plaintiff emailed Brotherton and expressed that a project Plaintiff was assigned to was "putting her health in jeopardy" because of her PTSD, depression, and heart condition. (Doc. No. 47-6 at PageID # 1112) Plaintiff informed Brotherton that she was on antidepressants and other medications for depression and PTSD and that she had stopped taking her medicine because she was so stressed and "got to the point of not caring." (Doc. No. 47-6 at PageID # 1113). In this email, Plaintiff informed Brotherton that she was not comfortable with a project she was working on and that continuing to work on the project "will be detrimental to my overall

2

health and my performance." (Doc. No. 47-6 at PageID # 1113). Plaintiff then asked Brotherton to meet with her to discuss structuring her schedule so that she didn't overwork or overstress herself. Plaintiff informed Brotherton that "if not I will have to look for a different job for my health, which I really don't want, but my health comes first." (*Id.*). Brotherton responded that she would be happy to sit down and talk with Plaintiff and stated that "[e]very site we walk into will present challenges." (*Id.*). Plaintiff responded that she would like to schedule a time to sit down and talk about how to structure Plaintiff's schedule to support her health, but it is unclear from the record whether any such meeting occurred.

Plaintiff informed ATCO on August 12, 2021, that she was in a mental health crisis and provided a doctor's note excusing her from work for the following week. (Doc. No. 47-10).[1] Plaintiff again informed ATCO that she was uncomfortable working on the project at ATCO and that it put her "in a mental tailspin and backed me into a corner." (*Id.*) Plaintiff also expressed that working on the project caused a "stress overload", that she felt that her concerns were not being heard or taken seriously, and that she was seeking mental health treatment because of "how far my mental health has been pushed." (Doc. No. 47-12 at PageID # 1131, 1132, 1135). Plaintiff also informed Brotherton that she had stopped eating, taking her medication, and sleeping as a result of work-related stress. (*Id.* at PageID # 1138).

---

[1] The Court notes that the record contains two versions of a doctor's note dated August 11, 2021, and there are discrepancies between the two exhibits. (Doc. Nos. 47-10, 47-11). One is included as a screenshot in a text message conversation between Plaintiff and Brotherton (Doc. No. 47-10) and states "To whom it may concern: Please excuse Dana from reporting to work on this date [August 11, 2021] as she has been referred to Partial Inpatient Mental Health Treatment." (Doc. No. 47-10 at PageID # 1124). The other is filed as a standalone exhibit (Doc. No. 47-11) and states "To whom it may concern: Please excuse Dana from reporting to work on this date [August 11, 2021] as she has been referred to Partial Inpatient Mental Health Treatment. Also, please excuse Dana from 8/11-8/16/21. She is establishing outpgient [sic] mental health treatment." (Doc. No. 47-11). Notably, the second and third sentences on the standalone exhibit appear to be in a different font than the first sentence and contain a typo. Nonetheless, ATCO does not challenge the authenticity of these documents.

In November 2021, Plaintiff complained about alleged nepotism between Brotherton and members of Brotherton's family who worked at ATCO. (Doc. No. 47-18). Plaintiff escalated her concerns to ATCO's Vice President, Stan Patterson, on December 17, 2021, and informed him that she wanted to discuss the alleged nepotism and "some new things that have come up", which Plaintiff testified was in reference to missing her scheduled appointments. (Doc. No. 47-18; Doc. No. 47-2 at PageID # 1069). Plaintiff also testified that she had a phone conversation with Patterson wherein they discussed her concerns about her appointments. (Doc. No. 47-2 at PageID # 1069). Plaintiff also expressed to Patterson that she wanted the investigation into her allegations to be kept anonymous because she "had some things being thrown back at me by Karen that have me uncomfortable because they are situations or things I did not ask for, but they are being used against me." (Doc. No. 47-18 at PageID # 1157).

On December 20, 2021, Plaintiff emailed Rhoden and Brotherton and informed them that she saw a counselor every two weeks to make sure her medications for depression were working and asked how they wanted her to schedule appointments. (Doc. No. 47-28). Brotherton responded that she needed to schedule them on Fridays so that her week was covered. (*Id.*)

On February 15, 2022, Plaintiff emailed Rhoden and Brotherton and requested to meet in person to discuss "concerns", including that Plaintiff felt overwhelmed. (Doc. No. 49-12). Rhoden met with Plaintiff to discuss her concerns and Plaintiff reported that she felt her concerns were heard, but the record is unclear as to the outcome of this meeting. (Doc. No. 49-3 at PageID # 1347).

Plaintiff emailed Brotherton on March 7, 2022, and expressed that she was struggling mentally and was unable to get her medications refilled due to her work travel schedule. (Doc. No. 47-24). Plaintiff also expressed that she had previously communicated to both Rhoden and

4

Brotherton that she needed to go to her appointments to renew her medications and that she was not able to pick up her medications due to her work schedule. (Doc. No. 47-24).

On March 29, 2022, Plaintiff resigned from ATCO. (Doc. No. 47-36). Plaintiff's resignation letter provided that "the environment has become too toxic for me, to where I am pushed to exit like this" and "[a]s you know, I have discussed with you my struggles about the various issues of unfairness, nepotism, and just an overall mentally unhealthy environment for me." (*Id.*).

On June 12, 2023, Plaintiff filed a Complaint against ATCO asserting claims for violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*. (the "ADA"), including claims for disability discrimination, failure to engage in the interactive process, failure to accommodate, and retaliation. (Compl., Doc. No. 1). On January 2, 2024, ATCO moved for judgment on the pleadings or, in the alternative, for summary judgment on the grounds that Plaintiff is judicially estopped from pursuing her claims in this case because she failed to disclose them during her prior bankruptcy proceedings. (Doc. No. 15). For the reasons set forth in the Court's Order entered on May 23, 2024, the Court granted ATCO's motion as to Plaintiff's claims for monetary relief but denied it as to Plaintiff's request to be reinstated. Accordingly, only Plaintiff's reinstatement claim remains before the Court.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party

5

may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

#### A. Failure to Accommodate

"Failure to provide a reasonable accommodation to a disabled, but otherwise qualified, person in the workplace is deemed unlawful discrimination under the ADA." *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017) (citing 42 U.S.C. § 12112(b)(5)(A); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007)). Because Plaintiff's claims are premised on ATCO's alleged failure to offer a reasonable accommodation, her claims are analyzed under the following direct-evidence test:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a

proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Cooper v. Dolgencorp, LLC*, 93 F.4th 360, 368 (6th Cir. 2024). ATCO contends that this claim fails because Plaintiff cannot show that ATCO failed to provide any reasonable accommodation. (Doc. No. 47 at PageID # 1039).[2] Whether an employee made a request for accommodation and whether an accommodation is reasonable are both fact-specific inquiries. *Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015). Here, the parties point to competing evidence as to whether Plaintiff requested an accommodation, whether ATCO offered her an accommodation, and the reasonableness of those requested and proposed accommodations.

ATCO contends that it approved of and accommodated all of Plaintiff's absences, including leave in August 2021 for mental health treatment, surgery in September 2021, and medical and personal leave in March 2022. (Doc. No. 47 at PageID # 1039; Doc. No. 47-3 at PageID # 1088). Brotherton testified that she never disciplined Plaintiff for any absences because of "reasonable accommodation", that Plaintiff was an exemplary employee, and that Brotherton was able to cover the time that Plaintiff needed off. (Doc. No. 47-3 at PageID # 1092, 1100). ATCO also argues that Plaintiff was absent from work on several occasions and was not penalized for her absences, even when Plaintiff was absent from work without giving advance notice. (Doc. Nos. 47-10, 47-3 at PageID # 1088, 47-14, 47-15, 47-22, 47-23, 47-24, 47-25, 47-26, 47-27). ATCO also points to evidence that in August 2021, Plaintiff was taken off the project she complained about and

---

[2] "When accommodation is necessary to enable a plaintiff to perform the essential functions of the position in question, it is the plaintiff's burden to propose an accommodation that is 'objectively reasonable.'" *Scaff v. Gap, Inc.*, 673 F. Supp. 3d 887, 902 (M.D. Tenn. 2023) (quoting *Keith v. Cty. of Oakland*, 703 F.3d 918, 927 (6th Cir. 2013)). Under the ADA, an employee is "otherwise qualified" for their position if they can perform the essential functions of their job with or without a reasonable accommodation. 42 U.S.C. § 12111(8). An employee ceases to be qualified for a job under the ADA if they "reject[] a reasonable accommodation." 29 C.F.R. § 1630.9(d).

7

reassigned to a different project. (Doc. No. 47-12 at PageID # 1143). ATCO also contends that Plaintiff never made any written request for an accommodation or sought a formal adjustment to her schedule because of her disability. (*Id.* at PageID # 1040).

In response, Plaintiff points to evidence that she informed Brotherton and Rhoden on several occasions that she was struggling with her mental health and requested to meet with Brotherton and Rhoden to discuss her concerns and attending her medical appointments. (Doc. Nos. 47-6, 47-10, 47-11, 47-12, 47-28, 47-26, 47-24, 49-12; Doc. No. 49-3 at PageID # 1347). Plaintiff also points to evidence that ATCO's corporate representative interpreted Plaintiff's March 7, 2022 email to Brotherton wherein Plaintiff expressed several mental health struggles as "[a] request for accommodation, it looks like just complaint about feeling like she hadn't been accommodated" and "[i]t looks like possibly a request that had been made previously." (Doc. No. 49-4 at PageID # 1359).

The Court finds that viewing the facts in the light most favorable to Plaintiff, she has created a genuine dispute as to whether she requested accommodations. *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 564 (6th Cir. 2022) ("'We have generally given plaintiffs some flexibility in how they request an accommodation.' Just as an employee does not need to use 'magic words' to inform her employer that she is disabled, the employee does not need to explicitly use the word 'accommodation.'… Additionally, 'an employee's initial request does not need to identify the perfect accommodation from the start.'").

Accordingly, ATCO has failed to establish the absence of material disputes of fact as to the failure to accommodate claim, and ATCO's motion for summary judgment will be denied as to that claim.

8

## B. Discrimination

Plaintiff does not point to direct evidence in support of her disability discrimination claim.[3] Where a plaintiff relies on indirect, circumstantial evidence to support her claims of discrimination and retaliation, the court will "apply the three-part burden-shifting framework developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668(1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)[.]" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775-76 (6th Cir. 2016).

To establish a *prima facie* case of disability discrimination by circumstantial evidence, Plaintiff must show that (1) she is disabled; (2) she is otherwise qualified for the position with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) ATCO knew or had reason to know of her disability; and (5) she was replaced or her position remained open while the employer sought other applicants. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). Under the ADA, the plaintiff's disability must be a "but for" cause of the adverse employment action. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419,433 (6th Cir. 2014). ATCO argues that Plaintiff cannot establish a disability discrimination claim under the

---

[3] "ADA discrimination claims are analyzed under two different rubrics, depending on whether the plaintiff relies on 'direct' or 'indirect' evidence of discrimination." *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (internal citation omitted). "Direct evidence of disability discrimination 'does not require the fact finder to draw any inferences [to conclude] that the disability was at least a motivating factor.'" *Id.* (internal citation omitted). "Whether a plaintiff's evidence may be properly categorized as direct or circumstantial is of importance, because a direct-evidence claim is removed from the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346–47 (6th Cir. 2012). "Instead, the plaintiff's case-in-chief is met, and 'the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive.'" *Id*. (quoting *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)). Additionally, when a plaintiff does not rely on direct evidence, the "[t] *McDonnell Douglas* paradigm is used… to evaluate a plaintiff's claim that his discharge from employment was discriminatory." *Cash v. Siegel-Robert, Inc.*, 548 F. App'x 330, 334 (6th Cir. 2013).

ADA because she did not suffer an adverse employment action and she presents no evidence of similarly situated employees.

1. Adverse Action

ATCO argues that Plaintiff cannot establish that she suffered an adverse action because: (1) she resigned and there is no evidence of any constructive discharge; (2) Plaintiff was not subjected to any intolerable working conditions; (3) Plaintiff ignored alternate options to obtain her prescription medications; and (4) Plaintiff's testimony contradicts her allegations. Specifically, ATCO argues that Plaintiff's constructive discharge claim fails because none of the documents she drafted around the time of her resignation reference concerns about a disability or ATCO's failure to accommodate her disability. ATCO points to evidence that during Plaintiff's exit interview, she ranked her job satisfaction as "Good" and stated that if ATCO's nepotism policy changed she would recommend ATCO "without reservation." (Doc. No. 47-35 at PageID # 1205, 1207).

ATCO also argues that there is no evidence that it deliberately created intolerable working conditions intended to force Plaintiff to quit because Brotherton never prohibited Plaintiff from taking time off to go to doctor's appointments and authorized Plaintiff to leave work early on Fridays for her appointments. (Doc. Nos. 47-28, 47-3 at PageID # 1088). ATCO also points to evidence that while Rhoden forgot about one of Plaintiff's appointment, Plaintiff voluntarily offered to reschedule and never advised Rhoden that she would not be able to get her medicine if she did not make her appointment. (Doc. No. 47-21). ATCO also argues that Plaintiff never looked into alternate options to pick up her medicine while she was working at an out of state facility and that Rhoden permitted her to go to her appointment, but Plaintiff did not do so because her gas mileage would not be reimbursed. (Doc. No. 47-2 at PageID # 1081).

10

Case 3:23-cv-00590   Document 54   Filed 11/15/24   Page 10 of 15 PageID #: 1546

In response, Plaintiff contends that she was constructively discharged. It is well-established that constructive discharge is an adverse employment action. *See e.g., Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014). A constructive discharge occurs when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation. *See id*. at 727. To establish a claim for constructive discharge, Plaintiff must show: (1) ATCO deliberately created working conditions that a reasonable person would perceive as intolerable, (2) ATCO did so to force Plaintiff to quit, and (3) Plaintiff quit. *Cooper v. Dolgencorp, LLC*, 93 F.4th 360, 373 (6th Cir. 2024).

The parties clearly dispute whether Plaintiff was given time off to attend her doctor's appointments, whether Plaintiff was disciplined for attending her appointments, and whether Rhoden informed Plaintiff that she was not allowed to leave the facility to pick up her prescription medication. (Doc. No. 50 ¶¶ 22, 55, 61, 62, 77; Doc. No. 49-3 at PageID # 1331; Doc. No. 49-2 at PageID # 1308). Plaintiff points to evidence that ATCO had a five point attendance policy wherein an employee receives a point for each absence and ATCO reserves the right to terminate the employee when the employee receives five attendance points. (Doc. No. 49-3 at PageID # 1330-1332; Doc. No. 49-4 at PageID # 1357-58). Plaintiff also points to evidence that ATCO issued attendance points to Plaintiff when she had planned absences supported by doctor's notes and that ATCO began contemplating whether Plaintiff was getting close to five points in early March 2022. (Doc. No. 49-6).[4]

---

[4] Plaintiff argues that she resigned from her position in lieu of termination. In support of this argument, Plaintiff contends that Rhoden told her that if she left she "probably [doesn't] have a job" and relies on an exhibit of a text message that appears to be between two individuals. (Doc. No. 49-16). However, the text message is undated, includes only brief excerpts of what is obviously a longer conversation, and does not include the names of the individuals involved or other context. In response, ATCO argues that the text messages appear to have been sent after Plaintiff's resignation, Plaintiff is not included on the text thread, and the text messages at issue were not even about Plaintiff but concerned employment of other individuals. (Doc. No. 53 at PageID # 1516). ATCO filed with its reply an exhibit depicting what appear to be electronic messages between two individuals that include a screenshot of the text message chain identified above. However, the context of the conversation and any details identifying the individuals involved

The record also demonstrates that Plaintiff expressed in her resignation letter that she was leaving, at least in part, because "the environment has become too toxic for me, to where I am pushed to exit like this" and "[a]s you know, I have discussed with you my struggles about the various issues of unfairness, nepotism, and just an overall mentally unhealthy environment for me." (Doc. No. 47-36). Viewing the facts in the light most favorable to Plaintiff, the Court finds that ATCO has failed to establish the absence of material disputes of fact as to whether Plaintiff was subjected to an adverse action.

2. <u>Replaced by Someone Outside of the Class</u>

ATCO next argues that Plaintiff cannot establish the fifth element of her claim because she cannot establish that any similarly situated employees from outside the protected class were treated differently. In support of its argument, ATCO points to evidence that Plaintiff identified three comparators during her deposition. (Doc. No. 47-2 at PageID # 1058-1061). ATCO argues that Plaintiff failed to show that any comparators were not disabled or were treated more favorably than her. (*Id.*). However, Plaintiff points to evidence that after she resigned, Rhoden and Brotherton took over her job duties. Plaintiff argues that neither Brotherton nor Rhoden are regarded as disabled and that Plaintiff's position was ultimately replaced by another individual whom is not regarded as disabled. Notably, an employee "is replaced ... when another employee is hired or reassigned to perform the plaintiff's duties." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 267 (6th Cir. 2010). Accordingly, the Court finds that ATCO has failed to establish the absence of material facts in dispute as to this claim and summary judgement is inappropriate.

---

in the conversation are again missing. The Court finds it unnecessary to make a finding as to the contents of these exhibits but is concerned about how these exhibits were presented for consideration.

**C. Retaliation**

To establish a *prima facie* case of ADA retaliation under the indirect evidence test, a plaintiff must show that "(1) [she] engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Morrissey v. Laurel Health Care Co.,* 946 F.3d 292, 304 (6th Cir. 2019) (quoting *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014)).

Here, ATCO asserts that Plaintiff cannot establish the first and third elements of her ADA retaliation claim because: (1) Plaintiff did not engage in protected activity because she did not make an "adequate request" for an accommodation or "clearly seek assistance with a known disability"; and (2) Plaintiff cannot establish any adverse employment action. ATCO also argues that there was no connection between Plaintiff's resignation and any protected activity.

The Court has already determined there is a material dispute of fact as to whether ATCO took an adverse action against Plaintiff. And as to the first element, Plaintiff points to evidence that Brotherton and Rhoden were aware of Plaintiff's disabilities, Plaintiff informed them on several occasions throughout her employment that she had depression and PTSD and expressed that her current workload and/or work environment was exacerbating her mental health conditions, and requested to meet with them to discuss how to support her health. (Doc. No. 47-12). Indeed, there is evidence that Plaintiff reached out to Brotherton and Rhoden on more than one occasion to discuss how badly she was struggling with her mental health. (Doc. Nos. 47-12, 49-8, 49-12, 49-9). Accordingly, the Court finds that summary judgment is inappropriate on this claim.

**D. Failure to Engage in the Interactive Process**

"'Under the ADA, when an employee proposes a reasonable accommodation, the employer has a duty to engage in an interactive process' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Swanton v. Wyndham Vacation Resorts, Inc.*, No. 3:20-CV-00480, 2021 WL 5744708, at *20 (M.D. Tenn. Dec. 1, 2021) (internal citation omitted). "Even though the interactive process is not described in the statute's text, the interactive process is mandatory, and both parties have a duty to participate in good faith." (*Id.*) (internal citation omitted).

ATCO argues that this claim fails because Plaintiff never made a formal request for an accommodation and ATCO never denied Plaintiff any time off. ATCO also argues that in addition to granting Plaintiff all the time off she requested, when Plaintiff raised an issue with her schedule or work location, ATCO gave Plaintiff first choice on the assignment that would best accommodate her schedule. ATCO contends that it also allowed Plaintiff to travel home for the weekend where her assigned plant was not operating and that the only time Plaintiff raised the issue of missing doctor's appointments to obtain her prescriptions was as "an excuse to cover an unscheduled multi-day absence from work" and that because Plaintiff did not request the time off in advance, there would be no way for ATCO to have engaged in the interactive process.

A factual dispute exists between the parties as to whether Plaintiff made a request for an accommodation and whether ATCO denied Plaintiff any time off. Additionally, the record is unclear as to whether Brotherton and Rhoden met with Plaintiff to discuss each of her complaints and the scope of any meetings. Accordingly, viewing the facts in the light most favorable to Plaintiff, the Court finds that ATCO failed to demonstrate the absence of dispute of material facts as to this claim.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE